LOUIS BIERBAUER, ADMINISTRATOR, ETC., OF WILLIAM HOLDEFER, DECEASED, RESPONDENT, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Action for negligent killing — damages — when verdict not set aside as excessive.*

In an action to recover damages for the death of plaintiff's intestate, caused by the negligence of the defendant, it appeared that the deceased was a young man, about twenty-one years of age, and earning about $25 per month. He was unmarried, had no children, and left a father, mother, two brothers and a sister residing in Germany. The jury gave a verdict for $5,000.

*Held*, that it should not be set aside as excessive.

APPEAL from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

The action was brought to recover damages for the death of

the plaintiff's intestate, alleged to have been caused by defendant's negligence in altering its tracks in such manner as to leave a highway adjoining the railroad, in a dangerous condition by reason of a considerable amount of earth having been removed from such highway.

The evidence tended to show that the deceased, on the evening of January 29, 1876, while driving his team along the Mohawk turnpike, came to a place adjoining the railroad, and excavated, to some extent, by the company in altering its tracks where the road was covered with water. Attempting to continue his way along the road, he was probably, thrown from the wagon and drowned. His body was found in the ditch along the road beneath the ice.

The deceased was unmarried, and had no children. He left him surviving his father, about sixty-five years old, and mother, two brothers and a sister, all residing in Germany. The jury gave a verdict for $5,000.

*S. W. Jackson*, for the appellant. A new trial should be granted upon the ground of the excessiveness of the damages found. (*McIntyre* v. *N. Y. C. R. R. Co.*, 47 Barb., 518; 24 N. Y., 471; *McIntyre* v. *N. Y. C. R. R. Co.*, 37 id., 289; *Mitchell* v. *N. Y. C. & H. R. R. R. Co.*, 2 How., 539.) Where the damages found by a verdict have only speculation and conjecture to sustain them, a new trial will be granted. (*Sheldon* v. *H. R. R. R. Co.*, 29 Barb., 228; *Bauder* v. *Lasher*, 5 Lans., 336.)

*H. Dunkel* and *E. Countryman*, for the respondent. The right of action is created by statute, which in the same connection prescribes the rule of damages, and confers the power upon the jury of giving such damages as they shall deem just and fair, within the rule. *Expressio unius est exclusio alterius.* Until it is apparent that the jury have violated the rule, the court ought not to interfere with their discretion. (*Coleman* v. *Southwick*, 9 Johns., 45; *Gale* v. *N. Y. C. & H. R. R. Co.*, 13 Hun., 1; *Ihl* v. *Forty-second Street R. Co.*, 47 N. Y., 317, 321; *O'Mara* v. *Hudson River R. Co.*, 38 id., 445; *Oldfield* v. *N. Y. & Harlem R. Co.*, 14 id., 310, 317; *Drew* v. *Sixth Avenue R. Co.*, 26 id., 49, 52; *McIntyre* v. *N. Y. Central R. Co.*, 37 id., 287, 289, 296; *Tilly* v. *Hudson R. Co.*, 29 id., 252; *Sloan* v. *N. Y. C. & H. R. R. R.*

*Co.*, 1 Hun, 540; 45 N. Y., 125.) In *Filer* v. *N. Y. C. & H. R. R. R. Co.* (49 N. Y., 42), the husband recovered $3,000 for loss of service from an injury to his wife, which was sustained. And in another action by the wife, for the pain and suffering from the same injury, she recovered $5,000, which was set aside. (49 N. Y., 47.) On the second trial she recovered $11,000, which was also set aside. (59 N. Y., 351.) On the third trial she recovered $12,000, which was sustained. (68 N. Y., 124.) These verdicts do not appear in the reports, but have been ascertained from examination of the error books in the State library. In *Shaw* v. *Boston & Wor. R. R. Co.* (8 Gray, 46), where a married woman was injured, there were three verdicts—the first $15,000, the second $18,000, and the third $22,250, which was sustained as not excessive.

BOCKES, J. :

It seems quite manifest that a case was made for the jury on the evidence submitted, as well on the question of the defendant's negligence, as also on the question of contributory negligence on the part of the deceased. It is not disputed that it was the duty of the railroad company to keep and maintain the turnpike in a reasonably safe condition for the traveling public at the place where the injury complained of occurred. So the condition of the highway at that point, and its immediate surroundings, and the circumstances under which the deceased was traveling when he was (probably) thrown from his wagon and drowned in the ditch or pit at the side of the traveled path, then flooded by a recent freshet, were laid before the jury ; and it became a question for them, whether the highway was in proper repair and reasonably safe for ordinary travelers ; and also whether the deceased exercised, under the circumstances, common prudence in continuing on over the road then completely submerged. On these questions the parties must be held to be concluded by the verdict of the jury. The questions then to be examined are, whether the case discloses any error calling for a reversal of the judgment either in the admission or rejection of evidence, or in the charge of the judge, or in his refusal to charge as requested. Evidence was offered and admitted against the defendant's objection, in

regard to the condition of the turnpike in the vicinity of the accident at times antecedent thereto, and also as to what changes or alterations had been theretofore made by the company. This evidence in a general sense was admissible. At the same time the examination in that regard was to be confined within proper limits, both as to time and distance from the point of the accident. To a very considerable extent those limits were, as they must be in all similar cases, in the discretion of the judge who conducts the trial, and the admission or rejection of such evidence in cases of imputed negligence will not be deemed ground of substantial error, save when it can be plainly seen that it must have operated injuriously to the rights of the party objecting. That cannot be here well maintained. Immateriality is the most that can be urged against such portions of the evidence objected to, as can be regarded as at all improper, and in the light of the judge's instructions to the jury the admission of the evidence could not have worked any harm. No point is made that evidence offered was improperly rejected.

It is insisted that the court erred in the charge to the jury, and also in the refusals to charge as requested. The instructions and comments of the judge in submitting the case to the jury were, as we think, perspicuous, full and substantially correct. The law applicable to the case was well stated, and without elaborating the several points of alleged error, both as to exceptions to portions of the charge, and also to the refusals to charge as requested, we are of the opinion that the case is free from error.

A more difficult subject is that relating to the damages allowed by the jury. The action is statutory, and the law declares the rule of damages applicable to the case. The damages allowable under this statute are such as the jury should "deem a fair and just compensation, not exceeding $5,000, with reference to the pecuniary injuries resulting from the death to the husband or widow, and next of kin of the deceased person." The jury here allowed damages to the full extent permitted by the statute. The deceased was a young man, about twenty-one years of age, and was earning $25 per month. He left no widow or child surviving him, his father, aged about sixty-five years, being his next of kin, and alone entitled to claim the compensation resulting from his

son's death. That compensation was to be awarded with reference to the "*pecuniary injuries*" which the father, in this case, would receive as a consequence of such death. Such is the construction to be given this statute. (*Tilley* v. *H. R. R. R. Co.*, 24 N. Y., 471; *McIntyre* v. *N. Y. C. R. R. Co.*, 37 id., 287.) As Judge DENIO remarks in Tilly's case, not that the word *pecuniary* is to be applied "in a sense so limited as to confine it to the immediate loss of money or property." But that "it looks to prospective advantages of a pecuniary nature, which have been cut off by the premature death of the person from whom they would have proceeded; and the word *pecuniary* was used in the statute in distinction to those injuries to the affections and sentiments which arise from the death of relatives, and which, though most painful and grievous to be borne, cannot be measured or recompensed by money. It excludes also those losses which result from the deprivation of the society and companionship of relatives, which are equally incapable of being defined by any recognized measure of value." This exposition of the statute is a liberal one, and has been generally accepted and adopted as sound. This, however, keeps in view the *pecuniary loss* resulting from the death of the person to the party or parties who, by the statute, are to have compensation. Now, the case under examination is quite different from one where a widow and children are survivors. In such case there are many elements of pecuniary damage existing which are wanting in this; especially would this be so in the case of a helpless widow and infant children. Yet here damages are given to the full extent allowed in any case. It was not intended by the statute that the full sum of $5,000 should be given in every case falling within its purview; but that less or more, not exceeding that sum, should be given accordingly as the evidence bearing on the condition of the parties, and the surrounding circumstances would warrant, holding in mind, as a measure of compensation, the pecuniary injuries sustained. In this view of the case, it seems that vindictive damages must here have been given. If so, the allowance was wrong. So, too, it was wrong, if the allowance included solely speculative or conjectural damages. Let every possible element of pecuniary injury, admissible under a fair and just construction of the

statute, be here considered even in the most liberal spirit, and it seems to me impossible that this verdict can be justified. It must be that either vindictive, exemplary, or speculative damages, or such as rested in simple conjecture, were allowed in this case. Otherwise, how could the jury, in view of the evidence before them, have reached the conclusion certified by the verdict? The probability that the father here suffered pecuniary loss to any considerable extent, from the death of the intestate, is, as it seems to me, a remote one indeed. It is admissible to permit a reduction of damages as an alternative to the granting of a new trial. (*Peck* v. *N. Y. C. & H. R. R. R. Co.*, 15 N. Y. Sup. Ct. [8 Hun], 286, 289; *Whitehead* v. *Kennedy*, 69 N. Y., 462, 470.) In my judgment, this is a proper case for the exercise of fair discretion in that regard; but my associates are of the opinion that the court should not trench upon the right of the jury to determine the damages to be awarded in cases of this character, unless it can be plainly seen that some improper element was considered and allowed in their estimate, or that they were influenced by passion, partiality, prejudice, or corrupt motives. In this view of the case, the verdict must be allowed to stand.

The order appealed from must, therefore, be affirmed with costs.

LEARNED, P. J., and BOARDMAN, J., concurred

Order affirm    with costs.